UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| RAY AND KRIS ANGERMAN, PAULA STOCKBRIDGE, and JANICE PARKER Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Civ. No.   18-13832 |
| | ) | CLASS ACTION COMPLAINT |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | DEMAND FOR JURY TRIAL |
| WHIRLPOOL CORPORATION, | ) ) | |
| Defendant. | ) ) | |

Plaintiffs Ray and Kris Angerman, Paula Stockbridge and Janice Parker (collectively, "Plaintiffs"), bring this class action complaint for damages and equitable relief against Defendant Whirlpool Corporation ("Defendant" or "Whirlpool").  Plaintiffs allege the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiffs, which are alleged upon personal knowledge:

## INTRODUCTION

1.      Whirlpool designs, manufactures, advertises, and sells a line of gas and electric stoves, ranges, and ovens featuring its proprietary "AquaLift® Self-Cleaning Technology" ("AquaLift"), an attribute that Defendant purports to, *inter alia*, "self-clean" the interior of a dirty oven in less than one hour using only water and low heat.[1]  Whirlpool's marketing and advertising for its ovens containing AquaLift (the "AquaLift Ovens" or "Ovens") is false, deceptive, and misleading to reasonable consumers because AquaLift – a key product feature – does not "self-clean" as advertised.  Hundreds, if not thousands, of consumers nationwide have complained publicly and to Whirlpool directly, and Whirlpool and its authorized sellers have admitted that AquaLift ***does not work***.

---

[1]   A list of the known model numbers of Whirlpool appliances featuring the falsely advertised AquaLift feature is attached hereto as Exhibit 1.

2.    Whirlpool describes AquaLift as "***oven cleaning redefined***,***"*** **"*innovation nearly 50 years in the making*,"** and a "***first-of-its kind cleaning solution***."[2]  According to Whirlpool, AquaLift uses an "exclusive coating on the interior [that] activates with water and heat, allowing moisture to release soils from underneath so food and debris ***easily wipe away***."[3]  Whirlpool emphasizes that consumers "can use AquaLift[TM] self-clean technology frequently to clean ***tough baked-on soils***[,]"[4] and that the cleaning process takes only 40 to 50 minutes.  Further, Whirlpool represents that after a "self-clean" cycle is complete, users of the Ovens can simply "remove residual water and ***loosened soils*** with a ***sponge or dry cloth***."[5]

3.    In Whirlpool's nationwide advertising and marketing campaign for AquaLift, Whirlpool does not set forth ***any*** limitations to the performance of the

---

[2]   Whirlpool Corporation AquaLift Technology, Frequently Asked Questions, http://whirlpoolcorp.com/aqualift/faq_q1.html (last visited Dec. 10, 2018), attached hereto as Exhibit 2.  Unless otherwise noted, emphasis is added throughout.

[3]   *Id.* at http://whirlpoolcorp.com/aqualift/faq_q2.html (last visited Dec. 10, 2018), attached hereto as Exhibit 3.

[4]   *Id.* at http://whirlpoolcorp.com/aqualift/faq_q7.html (last visited Dec. 10, 2018), attached hereto as Exhibit 4.

[5]   *Id.* at http://whirlpoolcorp.com/aqualift/faq_q3.html (last visited Dec. 10, 2018, attached hereto as Exhibit 5.

Ovens' "self-cleaning" technology and does not inform consumers that AquaLift only works on certain parts of the Ovens.

4.      Contrary to Whirlpool's representations in its advertising and marketing, AquaLift does not "self-clean" the Ovens or otherwise perform as advertised to consumers.  Indeed, the Internet is teeming with consumer complaints that describe the extent of Whirlpool's falsely advertised AquaLift technology.[6] Consumers complain, by way of example, that AquaLift "is ***totally useless***" and "***doesn't work AT ALL***."  These putative class members have called AquaLift "***a waste of money***," "***worthless***," "***junk***," "***a joke***," "***the biggest ripoff***," and "***fraud plain and simple***," and these consumers have asked, "[H]ow can the company get away with advertising [a] self-cleaning oven when it absolutely ***does not clean one bit?!***"[7]

5.      Whirlpool knew or should have known that its AquaLift feature cannot "self-clean" and does not function as advertised.  Indeed, in some instances, dissatisfied consumers, including Plaintiffs, have voiced their complaints directly to Whirlpool.  In response, Plaintiffs were largely advised by representatives of Whirlpool or its agents that if the AquaLift feature does not work, ***consumers should***

---

[6]  *See* infra ¶¶101-106.

[7]  *Id*.

- 3 -

***purchase cleaning supplies to manually clean the oven.*** This advice contravenes Whirlpool's advertising of AquaLift's ability "to clean tough baked-on soils" and the ability for a consumer to "remove residual water and loosened soils with a sponge or dry cloth" after the AquaLift feature is activated. This advice is also contrary to the "AquaLift Quick Reference Guide" which instructs consumers to avoid using "commercial oven cleaners" to manually clean the Ovens because it will damage the oven's interior.[8]

6.      Plaintiffs and the Class (defined below) did not receive any of the "self-cleaning" benefits of the AquaLift Ovens or observe the feature to work as advertised. Instead, Plaintiffs have been forced to either endure futile and inconvenient service attempts and/or complain to Whirlpool about the "self-clean" feature that does not work as advertised.

7.      Plaintiffs and members of the putative Class have no choice but to manually clean virtually all surfaces of their Ovens, due to AquaLift's inability to "self-clean" and work as advertised, or tolerate a perpetually dirty oven cavity. Whirlpool, in response to Plaintiffs' complaints, has sent "cleaning kits" and instructed some Plaintiffs to manually clean the Ovens.

---

[8]      AquaLift Technology, Oven Cleaning Quick Reference Guide, http://pdf.lowes.com/howtoguides/883049329918_how.pdf (last visited Dec. 10, 2018), attached hereto as Exhibit 6.

8.     At all times, AquaLift has failed to work and operate as advertised for Plaintiffs and the members of the putative Class resulting in damages including, but not limited to: (1) payment for a falsely advertised product; (2) overpayment for a product advertised to include a self-cleaning function, but did not; (3) a decrease in value of their Ovens due to the false advertising; and (4) out-of-pocket money spent in connection with servicing AquaLift and/or manually cleaning the Oven.

9.     Plaintiffs assert claims on behalf of a Class for violations of the consumer protection statutes of Minnesota, Washington, and Georgia as well as claims for breach of contract, breach of express and implied warranties, and unjust enrichment.

10.     Plaintiffs also assert claims on behalf of a Minnesota Subclass, Washington Subclass, and Georgia Subclass (all defined below), for respective violations of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §325F *et seq.* and Minn. Stat. §8.31, *et seq.* ("MCFA"), Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43, *et seq.* ("MDTPA"), Georgia Fair Businesses Practices Act, Ga. Code Ann. §10-1-390 *et seq.* ("GFBPA"), Georgia Uniform Deceptive Trade Practices Act, Ga. Code Ann. §10-1-370, *et seq.* ("GUDTPA") and Washington Consumer Protection Act, Wash. Rev. Code §19.86.010 *et seq.* ("WCPA"), as well as for breach of contract, breach of express and implied warranties, and unjust enrichment.

- 5 -

11.     As alleged herein, Plaintiffs and other reasonable consumers (the "Class members") purchased Ovens equipped with AquaLift, which were designed, manufactured, advertised, marketed, and sold by Whirlpool, its subsidiaries, and its authorized sellers.  Plaintiffs and the Class purchased the Ovens after Whirlpool and its representatives and agents represented to them that AquaLift would "self-clean" their Ovens.

12.     Contrary to Whirlpool's advertising, marketing, and express and implied warranties, AquaLift does not and cannot "self-clean" the inside of an Oven. Therefore, Plaintiffs and the Class were damaged by Whirlpool's false, deceptive, and misleading advertising campaign.

13.     Plaintiffs and the Class members would not have purchased the Ovens had they known they would not self-clean as promised.  Plaintiffs and the Class would not have purchased the Ovens – certainly not at the prices they paid – were it not for Whirlpool's false, deceptive, and misleading advertising and/or Whirlpool's failure to disclose to consumers the material fact that AquaLift "self-clean" is incapable of performing according to Whirlpool's advertising, marketing, and express and implied warranties.

## THE PARTIES

### Ray and Kris Angerman

14.     Plaintiffs Ray and Kris Angerman ("Mr. and Mrs. Angerman" or the "Angerman's") are citizens of Minnesota and, at all relevant times, were residents of Hastings, Minnesota.  On or around October 17, 2013, Mr. and Mrs. Angerman purchased a Whirlpool Electric Stove equipped with AquaLift from the retailer Judge's Appliance in Hastings, Minnesota.  One of the bases for the purchase of that oven was that it contained a "self-clean" feature.

15.      Shortly after they purchased their oven, Mr. and Mrs. Angerman  ran the AquaLift self-cleaning cycle.  Once the cleaning cycle was complete, Mr. and Mrs. Angerman observed that AquaLift's "self-clean" did not clean the inside of the oven.  Mr. and Mrs. Angerman re-ran the AquaLift cleaning cycle several times after that and observed that it still did not work to self-clean the oven.  Mr. and Mrs. Angerman were forced to manually scrub their oven after each use.

16.     At all times, the AquaLift feature of the Angerman's oven has not performed as advertised and has not "self-cleaned" their oven, thereby causing them damages.

### Janice Parker

17.     Plaintiff Janice Parker ("Ms. Parker" or "Parker") is a citizen of Georgia and, at all relevant times, was a resident of Woodstock, Georgia.

18.     On or around March 27, 2014, Ms. Parker purchased a Whirlpool Electric Stove equipped with the AquaLift "self-clean" feature from a BrandsMart U.S.A. store in Kennesaw, Georgia.  Ms. Parker was specifically in the market looking for a "self-cleaning" oven.  Prior to her purchase, Ms. Parker saw advertising on the oven indicating that the appliance was a self-cleaning oven.  She also recalls observing that the oven was energy efficient.   A BrandsMart U.S.A. sales representative informed Ms. Parker that AquaLift was the latest in self-cleaning technology and the cleaning cycle worked well.

19.     Approximately two months after her purchase, Ms. Parker used AquaLift for the first time.  She closely followed the instructions in the user manual.  When the cleaning cycle was complete, however, she observed the cleaning cycle had no effect on the interior of her oven – it only left a large puddle of water.  As a result, Ms. Parker, was forced to manually clean her oven and remove the water from the bottom of her oven.

20.     Ms. Parker has activated AquaLift several times since she first used it, each time closely following the user instructions and has suffered the same results.  Because of AquaLift's poor cleaning ability, she no longer uses her oven.

21.     At all times, the AquaLift feature of Ms. Parker's oven has not performed as advertised and has not "self-cleaned" the oven, thereby causing her damages.

**Paula Stockbridge**

22.     Plaintiff  Paula Stockbridge ("Ms. Stockbridge" or "Stockbridge") is a citizen of Washington and, at all relevant times, was a resident of Gig Harbor, Washington.  On or around February 2016, Ms. Stockbridge purchased a KitchenAid Electric Stove equipped with AquaLift from Albert Lee Appliance in Tacoma, Washington.   The AquaLift cleaning system appealed to her because she saw placards in the Albert Lee appliance store showcasing the ease of the oven's self-cleaning attribute.

23.     Within approximately three months of purchase, Ms. Stockbridge activated the AquaLift feature after closely following the user instructions.  At the end of the "self-cleaning" cycle, Ms. Stockbridge observed that the AquaLift feature had no cleaning effect on the walls and back of her oven cavity and it did not loosen any baked on soils from the bottom of the oven.  She then attempted to manually clean her oven with Whirlpool's AquaLift "cleaning kit."

24.     Thereafter, Ms. Stockbridge complained to the retailer Albert Lee about the cleaning performance of AquaLift.  An Albert Lee sales representative informed her he would relay her complaint to Whirlpool.  She was later told by the sales representative that there was nothing Whirlpool or Albert Lee could do to help with the cleaning performance of her oven.

25.     Ms. Stockbridge continued to use AquaLift and followed the instructions closely.  Still, AquaLift's "self-cleaning" attribute cannot remove or loosen any of the grease and soils from the back, side, and bottom of her oven.  Ms. Stockbridge is, therefore, forced to manually clean her oven.

26.     At all times, the AquaLift feature of Ms. Stockbridge's oven has not performed as advertised and has not "self-cleaned" her oven, thereby causing her damages.

**Whirlpool Corporation**

27.     Defendant Whirlpool is a Delaware corporation headquartered in Benton Harbor, Michigan.   Whirlpool describes itself as the world's leading manufacturer and marketer of household appliances.   Ovens equipped with the AquaLift feature are sold and distributed under the Whirlpool brand name and its wholly-owned subsidiaries including Maytag Corporation ("Maytag"), KitchenAid, Inc. ("KitchenAid"), and the Jenn-Air Products Company ("Jenn-Air") (collectively, the "Ovens").  At all relevant times, Whirlpool designed, manufactured, distributed, advertised, marketed, promoted, and sold the Ovens equipped with the falsely advertised AquaLift feature.

**JURISDICTION AND VENUE**

28.     This Court has jurisdiction pursuant to 28 U.S.C. §1332, as amended by the Class Action Fairness Act of 2005, because at least one member of the Class

is a citizen of a different state than Whirlpool, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

29.    Venue is proper in this District pursuant to 28 U.S.C. §1391 because many of the acts and transactions giving rise to this action occurred in this District and because: (a) Whirlpool is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution, and sale of its appliances with AquaLift; (b) Whirlpool conducts substantial business in this District; and (c) Whirlpool is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### Whirlpool Extensively Advertises AquaLift's Purported Ability to "Self-Clean" the Interior of Its Ovens

30.    Whirlpool describes itself as the world's leading manufacturer and marketer of household appliances.  Whirlpool sells household appliances, such as kitchen ovens, under various brand names, including, Whirlpool, Maytag, KitchenAid, and Jenn-Air.

31.    Whirlpool designed, manufactured, advertised, and sold throughout the United States at least 87 models of kitchen Ovens featuring AquaLift "self-cleaning" technology.  AquaLift is available on gas or electric Ovens of different sizes.

- 11 -

32.     Whirlpool advertises its AquaLift technology as a key feature to distinguish the Ovens from competitors.  Indeed, through its website, in-store point-of-sale displays, and product information labels on the appliances themselves, Whirlpool touts AquaLift as "***oven cleaning redefined***," "***innovation nearly 50 years in the making***," and a "***first-of-its kind cleaning solution*** that is activated with heat and water to release ***tough baked-on soils*** from the oven interior in less than 1 hour."

33.     Whirlpool even dedicates an independent page of its website solely to showcase its AquaLift technology.[9]  On that page, under a large bold heading that reads, "***Cleaning your oven just got faster, cooler, and easier***," Whirlpool shares a video demonstration of the purported superiority of its AquaLift self-clean technology over traditional self-cleaning ovens:



---

[9]   Whirlpool Corporation AquaLift Technology, "Cleaning your oven just got faster, cooler, and easier," http://whirlpoolcorp.com/aqualift/index.html (last visited Dec. 10, 2018), attached hereto as Exhibit 7.

34.     A voiceover in the video states that, "it's time for something new.  Time for AquaLift technology":



35.     "The baked on stains may be the same, but now you can have your oven back in less than one hour.  All with less heat and no odor.":



36.     "AquaLift technology, *an innovation* from Whirlpool Corporation. *Redefines oven cleaning*.":

- 13 -



37.    "Simply remove the oven racks . . .":



38. ". . . and wipe out the excess soil.":



39. "Pour two cups of water in the bottom of the oven, and *let AquaLift technology do the work*.":



40. "This **innovative coating** is activated by water and heat.":



41. "It lifts tough baked-on soils from underneath, making oven cleaning a snap.":



42.     "In under an hour, the oven is ready for a final wipe down to remove the soil.":



43.     "All done in less time, with no odor, and no extreme heat like traditional, high-temperature self-clean ovens.   AquaLift technology is ***oven cleaning redefined***.":



44.     On the AquaLift "frequently asked questions" ("FAQ") page, Whirlpool describes AquaLift as "a ***first-of-its kind cleaning solution*** that is

activated with heat and water to release **tough baked-on soils** from the oven interior in less than 1 hour."[10]

45.     Whirlpool's FAQs page represents that AquaLift works through an "exclusive coating on the interior [that] activates with water and heat, **allowing moisture to release soils from underneath so food and debris easily wipe away**."[11]

46.     Whirlpool also offers consumers an AquaLift "Quick Reference Guide" which describes AquaLift as an *"innovative cleaning solution"* that "utilizes heat and water to release baked-on spills from the oven interior in less than 1 hour."[12]

47.     The "Quick Reference Guide" sets forth five steps to make the AquaLift perform as advertised stressing that consumers should not attempt to manually clean the Oven with "commercial" cleaners or any other cleansers, that the "residual water and loosened soils" can be removed by a sponge or dry cloth **immediately after the cycle is complete**, that the "cleaning action loosens baked-on residue **from the oven bottom**" and that consumers must "clean the oven door and wall" themselves "to **avoid baked-on soil.**"[13]

---

[10]   *See* Exhibit 2.

[11]   *See* Exhibit 3.

[12]   *See* Exhibit 6.

[13]   *Id.*

48.     The "Quick Reference Guide" also has a "Helpful Tips" section.  This section states in pertinent part that "[*h*]*eavily soiled ovens may require a second cleaning cycle*."[14]   While this language implies that the AquaLift, if at least used multiple times, will remove heavy soil from all parts of the Oven cavity, Whirlpool fails to mention that the AquaLift cannot clean the Oven walls and the Oven door.



---

14   *Id.*



49.     Whirlpool also represents the ease of use of AquaLift and that operation of the AquaLift feature "takes just a few steps."

50.     For example, its website states that:

- "[a]fter removing all racks and accessories from the oven cavity and wiping excess soil up, simply:

- Pour . . . water onto the bottom of an empty AquaLift™ self-clean technology enabled oven and close the door.

- Press "Clean" then "Start" to begin the 40 minute cycle. . . . When the cycle is complete, a beep will sound.  Press "Cancel" to end.

- 20 -

- Immediately after the cycle is complete, remove residual water and loosened soils with a sponge or dry cloth.[15]

51.     Whirlpool further represents that AquaLift was "developed to directly address **consumer dissatisfaction with traditional high-temperature self-clean ovens** and to provide them an alternative cleaning solution."[16]

52.     According to Whirlpool, the "key benefits of using AquaLift™ self-clean technology" include that it "SAVES TIME: The cleaning process takes under one hour compared to the average 3-6 hours of traditional self-cleaning ovens" and "NO ODOR: Since AquaLift™ self-clean technology uses water to clean it avoids the traditional chemical odors associated with traditional oven cleaning."[17]

53.     Whirlpool further represents that AquaLift can be used "frequently to clean **tough baked-on soils**."[18]

54.     A "Glossary" section of the Whirlpool website contains the following entry for AquaLift: "AquaLift® Self-Clean Technology.  Get your oven clean in less than an hour with odor-free, low temperature AquaLift® technology.  This **exclusive**

---

[15]   *See* Exhibit 5.

[16]   Whirlpool Corporation AquaLift Technology, Frequently Asked Questions, http://whirlpoolcorp.com/aqualift/faq_q5.html (last visited Dec. 10, 2018), attached hereto as Exhibit 8.

[17]   *Id.* at http://whirlpoolcorp.com/aqualift/faq_q6.html (last visited Dec. 10, 2018), attached hereto as Exhibit 9.

[18]   *See* Exhibit 4.

*coating* on the interior activates with water and heat, ***allowing moisture to detach soils from underneath*** so food and debris ***easily wipe away***."[19]

55.     Whirlpool also advertises the AquaLift feature on individual product webpages.  For example, the webpage for Whirlpool's 6.4 Cu. Ft. Freestanding Electric Range model number, WFE540H0ES, with AquaLift® Self-Cleaning Technology, states that: "[a]t the end of the meal, this large oven's easy wipe ceramic glass cooktop offers hassle-free cleanup, while AquaLift® self-cleaning technology delivers ***odor-free oven cleaning without chemicals in only 50 minutes***."[20]

56.     Similarly, the webpage for Whirlpool's 5.8 cu. ft. Front-Control Gas Stove with Fan Convection, model number WEG730H0DB states that: "[w]hen it's time for cleanup, AquaLift™ self-cleaning technology helps you ***wipe away messes*** in your slide-in gas stove without harsh chemicals or odors.[21]

---

[19]  Whirlpool Corporation AquaLift Technology, Frequently Asked Questions, http://www.whirlpool.com/glossary/#A (last visited Dec. 10, 2018), attached hereto as Exhibit 10.

[20]  http://www.whirlpool.com/kitchen-1/cooking-2/ranges-3/-[WFE540H0ES]-1022746/WFE540H0ES/ (last visited Dec. 10, 2018), attached hereto as Exhibit 11.

[21]  http://www.whirlpool.com/-[WEG730H0DS]-1022391/WEG730H0DS/   (last visited Dec. 10, 2018), attached hereto as Exhibit 12.

57.     The webpages for Whirlpool's various other models of the Ovens include similar misrepresentations regarding AquaLift's purported ability to "self-clean[]" ovens in less than one hour.[22]

58.     Whirlpool echoes these misrepresentations directly on the product label of each Whirlpool oven equipped with AquaLift.

### Whirlpool's Nationwide Advertising Campaign for AquaLift Is False Deceptive and Misleading to Reasonable Consumers

59.     Whirlpool's entire advertising campaign for AquaLift – a key product feature – is false, deceptive, and misleading to reasonable consumers because, contrary to Whirlpool's representations, AquaLift does not "self-clean" the interior of the Ovens and, instead, requires consumers to manually clean their Ovens with cleaning products – *defeating the purpose of a "self-cleaning" oven*.

60.     To be sure, the Internet is teeming with consumer complaints regarding AquaLift's inability to "self-clean."  For example, on February 8, 2013, one consumer posted the following complaint on Consumerist.com:

> I have a 30 day old Kitchen Aid convection gas range.  Love how it cooks.  HOWEVER, their *"Aqualift" cleaning technology is a rip*

---

[22] *See, e.g.*,   http://www.whirlpool.com/-[WEE730H0DS]-1022332/WEE730H0DS/ (last visited Dec. 10, 2018); http://www.whirlpool.com/-[WEC530H0DS]-1022331/WEC530H0DS/ (last visited Dec. 10, 2018); http://www.whirlpool.com/-[WFE745H0FS]-5764098/  WFE745H0FS/  (last  visited  Dec.  10,  2018); http://www.whirlpool.com/-[WFG715H0EH]-1022749/WFG715H0EH/            (last visited Dec. 10, 2018), attached hereto as Exhibit 13.

- 23 -

***AND entirely misleading***. . . .  So… every time you want to clean your cool new oven, ***you'll be scrubbing it yourself!!!***[23]

61.     This dissatisfied consumer also posted the following photograph of the final results of Whirlpool's AquaLift "self-clean" technology:



---

[23]   https://consumerist.com/2013/02/08/my-advanced-new-self-cleaning-oven-needs-a-lot-of-help-to-clean-itself/ (last visited Dec. 10, 2018), attached hereto as Exhibit 14.

62.    In November 2015, another dissatisfied consumer posted a photograph of an Oven that had "self-cleaned" with AquaLift:[24]



63.    Countless other complaints from putative Class members can be found on the Internet.  Online references and complaints regarding the Ovens mirror plaintiffs' experience, including the following sampling:

| Source | Comments |
| --- | --- |
| Consumer Affairs 4/18/16 https://www.consumeraffairs.com/ho | Purchased the oven in summer 2015.  Very disappointed in the AquaLift Self-Cleaning oven.  Absolutely useless**.  *Does absolutely nothing and I end up cleaning the oven by hand.*** As a senior citizen, this is uncomfortable; I have injured my leg in the process and now feel I must wipe the oven down after each use.  I was so looking forward to having a nice clean oven at all times and it's not happening.  This is of no value to me. |

---

[24]  https://www.consumeraffairs.com/homeowners/kit_stoves.html   (last   visited Dec. 10, 2018), attached hereto as Exhibit 15.

| Source | Comments |
|---|---|
| meowners/whirlpool_ranges.html[25] | |
| Consumer Affairs 4/7/16 https://www.consumeraffairs.com/homeowners/whirlpool_ranges.html[26] | I HATE, HATE, HATE the aqua lift clean feature. It's awful. The bottom came somewhat clean but cook bacon and the sides and top are filthy and the aqua lift can't clean that. I don't know how this ever made it past the thought process stage to become a "thing" but it needs to go away. I'm quite cranky right now as *I've just spent two hours scrubbing my oven while reaching past the oven door that doesn't come off because it's a "self-clean oven."* This is what I have to look forward to for the next 10 years until it dies and I can get a new oven? What a joke!! |
| Consumer Affairs 4/1/16 https://www.consumeraffairs.com/homeowners/whirlpool_ranges.html[27] | We bought a new stove from Lowe's in 2015 which is a Whirlpool with an AquaLift self-cleaning function. *This function is totally useless.* We have tried it several times and it does not remove the grime from the oven. We did not even have a very dirty oven. It doesn't clean the sides at all and the bottom is still dirty. I complained to the store and they told me the AquaLift function should be used every time the oven has been used. They recommend that I use a spray for the oven (which is porcelain) and scrub off the dirt. Give me back my old self-cleaning oven with the high heat. This new technology doesn't work. |
| Consumer Affairs 3/4/16 https://www.consumeraffairs.com/homeowners/whirlpool_ranges.html?page=2[28] | Whirlpool Gold Series gas oven with Aqua Lift. Very unhappy with this oven. Cons: *Aqua Lift technology doesn't work AT ALL* (manual cleaning required); stove top hard to clean; 2 front gas burners are "super" burners which is fine for boiling water, but too hot for regular cooking. Would be better to have one super burner in the middle or back but two upfront is way too hot for regular cooking, even on lowest setting. Was going to use spray cleaner but cannot on convection ovens. In a bind what to do except scrub with Brillo. Anyone used Brillo? |
| Consumer Affairs 2/23/16 https://www.consumeraffairs.com/ho | Whirlpool gas range Model#wfg10h0ah1 with aqua lift technology. This is the biggest ripoff that was ever done to me. It say self clean, not it cleans and then you clean. *This is fraud plain and simple.* I am handicapped and made it very clear to the salesperson that it had to be self cleaning. 4 times |

---

[25]  Attached hereto as Exhibit 16.

[26]  Attached hereto as Exhibit 17.

[27]  Attached hereto as Exhibit 18.

[28]  Attached hereto as Exhibit 19.

| Source | Comments |
|---|---|
| meowners/whirlpool_ranges.html?page=2[29] | I did the clean cycle and I was in shock, I called repair, I thought the self clean was broken.  However this is the line they give you over and over, that it's not broken.  "This is working the way it was designed to work."  So they made a range that is self cleaning, but no it doesn't do that.  For 899.99, I did not deserve to get duped like this. |
| Consumer Affairs<br><br>9/24/15<br><br>https://www.consumeraffairs.com/homeowners/kit_stoves.html?page=2[30] | Like so many other reviewers I am totally dissatisfied with my KitchenAid Gas Range Model KGRS202BSS.  I second the reviews by Gary of Tonawanda, NY on May 20, 2015 (and others) that the AquaLift Self Clean is not effective and that the black stove top stains, but primarily I totally agree with his comment about how the heat vents out and heats up the handles.  This was also the comment of Sharyn of Pearl River, NY on July 2, 2015 (who I would like to thank for the tip about requesting the black knobs which I intend to do).<br><br>***This range is TERRIBLE.  It becomes a literal sauna in my kitchen*** when I try to cook using the stove top and/or the oven.  Everyone who comes to my home comments on it.  And this is despite the fact that I have a fan above the oven which is vented to the outside.  I take care of my 2 year old grandson, and I live in fear of him burning himself since the knobs are obviously within his reach.  He has definitely learned about the concept of HOT.  ***I purchased this range from PC Richards, and they have sent 3 different servicemen out, only to tell me that's the way it is!***  Unbelievable.  I just visited my friend who has a kitchen much smaller than mine, and her new Maytag slide in gas range did not produce the sauna effect that my KitchenAid range does.  DON'T BUY KITCHENAID.  YOU'LL REGRET IT. |
| Consumerist<br><br>9/28/14<br><br>https://consumerist.com/2013/02/08/my-advanced-new-self-cleaning-oven-needs-a-lot-of-help-to-clean-itself/[31] | Whirlpool's Aqualift self-cleaning system seemed to be a technological advance comparable to see-through dishwashers, but she reports that her oven only cleans the bottom center, and not the sides or the corners.  You know, the parts that you want your self-cleaning oven to take care of for you. |

---

[29]   Attached hereto as Exhibit 20.

[30]   Attached hereto as Exhibit 21.

[31]   Attached hereto as Exhibit 22.

| Source | Comments |
| --- | --- |
| Houzz (GardenWeb) 9/19/2012 http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[32] | ***Get ready for rubber gloves and oven cleaner. It does not work.*** Consumer reports says it doesn't work, but I bought before reading reviews. I want to get rid of mine. They are sending me a special oven cleaner for this piece of junk so what good is this self cleaning oven that needs a special oven cleaner? I will never again buy American. |
| Houzz (GardenWeb) 1/29/13 http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[33] | I bought A Whirlpool range convection, self cleaning and I'm very furious too because the self cleaning, after several time of cleaning, which the last one ***I let it go for 4 hours, it didn't clean anything at all***. My old GE of 30 years used to come out spotless. It has been over a year already, twice the technician came out and there was nothing he could do. We bought 5 years extended warranty and Sears told us there is nothing they can do. I still have to try calling the manufacturer, hoping they'll give me some satisfaction. It really sucks. We should be more further ahead with technology. Now I don't know who to trust anymore. |
| Houzz (GardenWeb) 2/11/2013 http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[34] | I, too, unfortunately purchased this awful oven. ***It is uncleanable!*** I bake frequently, and any form of grease splatter is not removable from the sides and back. Wrote to the company and all they did was tell me to follow the instructions that came with the range! Do they think I'm stupid? I am very angry. Any advice that can be passed along regarding how I can clean it, or how to make the company responsible for this lousy oven, would be greatly appreciated. |
| Houzz (GardenWeb) 2/13/2013 http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on- | I was also dumb enough to buy this range. I've had it one year. Have written complaints to Maytag and Whirlpool. I received phone calls from some underpaid know nothing who treated me as if I'd never cleaned an oven before. ***For Whirlpool/Maytag to call this "self-cleaning" is false advertising and they need to make it right with me or I will not purchase another product from them ever again!*** |

---

[32] Attached hereto as Exhibit 23.

[33] Attached hereto as Exhibit 24.

[34] Attached hereto as Exhibit 25.

| Source | Comments |
|---|---|
| maytag-ranges-oven-cleaning)[35] | |
| Houzz (GardenWeb) 1/18/2014 http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[36] | I have this horrible range and it is a piece of garbage.  It might as well not even have a self cleaning feature.  It does not work.  Cleaning the glass top of the stove is also very difficult.  ***It was a total waste of money, Maytag doesn't care and won't do anything about it.***  DO NOT PURCHASE ONE.  There is also little to no storage space in the drawer.  There is not one good thing I can say about this stove.  Not one. |
| Houzz (GardenWeb) 5/11/2015 http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[37] | I bought this range WYMER888BW the 25th Jan. 2014.  ***What a waste of money, self clean not at all.  Would never buy a Maytag or Whirlpool product again.  Takes a lot of hard scrubbing & scraping not to mention time to do repeated steam clean cycles and trying to clean this trash***.  Biggest mistake in a purchase we have made in our 50 years of marriage.  Would not recommend!!! |
| Houzz (GardenWeb) 9/13/2015 http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[38] | Does not work at all!  My wife and I bought it 2 years ago from Lowes (on sale).  We have tried the self cleaning feature multiple times, even have run it twice (simultaneously) to see if double the cleaning time would help.  Each time, we end up using gloves and other cleaning products to scrape out the mess.  I don't know how Maytag tested this before it was marketed, but it does not clean anything. |
| Houzz (GardenWeb) 9/14/2015 http://ths.gardenweb.com/discussion | i gave up fighting with maytag/whirlpool..after a year of owning the same oven, it was junk.  I sold it for 500$, (loss 200$)and bought a regular GE stove which has the old fashion kind of self cleaning oven cleaning feature...and i LOVE it.  Never will i purchase a whirlpool or Maytag product again.  They are throw away appliances in more |

---

[35]  Attached hereto as Exhibit 26.

[36]  Attached hereto as Exhibit 27.

[37]  Attached hereto as Exhibit 28.

[38]  Attached hereto as Exhibit 29.

| Source | Comments |
|---|---|
| s/2293510/aqualift -technology-on- maytag-ranges- oven-cleaning)[39] | ways than one.  Good luck on your junk.  Sell it , take the loss and get rid of your headache. |
| Houzz (GardenWeb) 11/27/2015 http://ths.gardenw eb.com/discussion s/2293510/aqualift -technology-on- maytag-ranges- oven-cleaning)[40] | Whoever invented Aquaift to clean ovens obviously never cleaned an oven ever!!  Today, a day after Thanksgiving I spent all morning "cleaning" my oven only to have it look as bad as it did before I started.  *The AquaLift did nothing for the sides and the stains on the bottom after two cleaning cycles!!!*  Whatever can be done other than getting a new oven? |
| Houzz (GardenWeb) 12/16/2015 http://ths.gardenw eb.com/discussion s/2293510/aqualift -technology-on- maytag-ranges- oven-cleaning)[41] | This is so frustrating.  I too do not read the reviews before purchasing.  I saw that it was self-cleaning that was all I thought I needed to know.  How can this be considered new technology and how can the company get away with advertising self-cleaning oven when it absolutely does not clean one bit?!  Very frustrated! |
| Houzz (GardenWeb) 12/30/2015 http://ths.gardenw eb.com/discussion s/2293510/aqualift -technology-on- maytag-ranges- oven-cleaning)[42] | We had the Whirlpool recommended technician from Appliance Mechanics (425-212-9076) out on 12/29 and he verified that the Aqua-Lift is working as designed (meaning what??).  However that doesn't solve the problem with the promises that were made regarding how well this technology is supposed to work.  *It can't be cleaned with conventional cleaners and the bottom is stained from food that never came up after the cleaning and scrubbing per Whirlpool's instructions*.  I have sent 4 emails to Whirlpool customer service and never heard back.  What we are requesting is that since that Whirlpool is promoting this as the next best thing and not performing up to our (and anyone on the internet who has this technology) expectations, we are requesting that |

---

[39]   Attached hereto as Exhibit 30.

[40]   Attached hereto as Exhibit 31.

[41]   Attached hereto as Exhibit 32.

[42]   Attached hereto as Exhibit 33.

| Source | Comments |
|---|---|
|  | Whirlpool replace the oven with one comparably priced that has conventional cleaning capabilities<br><br>Follow-up: I finally got in touch with Whirlpool after 4 emails and posting on Facebook.  It seems that they respond when you post on social media.  I was requesting a replacement oven with conventional self cleaning and and after much back-and-forth I was informed that because the technician reported that the oven was functioning correctly that they could not give me a replacement.  Their reason being that a continually dirty oven had nothing to do with function but was a cosmetic issue.  The CS rep was "kind" enough to offer me a bottle of the Affresh cleaner.  Don't fall for the AquaLift hype. |
| Houzz (GardenWeb)<br><br>1/31/2016<br><br>http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[43] | Yes.  ***This oven aqua clean is a joke!***  I wish I could have my old oven than got VERY hot and stinky back.  Would rather clean up a little ash than scrub my fingers off! |
| Houzz (GardenWeb)<br><br>2/20/2016<br><br>http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[44] | I just tried the Aqualift feature and am on the thrid cycle now.  So far only the bottom part has gotten clean and the sides are still greasy.  Hate this feature.  ***Had I known how horrible it was I would have never bought it.  I am also not happy with the glass top as that too is difficult to keep clean.***This is the first time I have used the Aqualift feature and it was right after grease was spilled from a meatloaf pan.  If anyone is looking to buy a stove with this feature don't. |
| Houzz (GardenWeb)<br><br>3/18/2016<br><br>http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on- | The aqualift does not clean at all!  I finally go disgusted and used oven cleaner and it took the finish off the sides of oven, so now my oven is ruined.  Looks dirty all the time, so dissatisfied.  As I used the oven cleaner I know I will have no prayer with Whirlpool.  I bought this stove without reading reviews.  My mistake, never again!  ***With all these complaints and a product that obviously does not do it's job, there has to be a class action maybe?*** |

---

[43]   Attached hereto as Exhibit 34.

[44]   Attached hereto as Exhibit 35.

| Source | Comments |
|---|---|
| maytag-ranges-oven-cleaning)[45] | |
| Houzz (GardenWeb) 4/30/2016 http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[46] | Welcome to the crappy Aqualift club!  I finally put some foil on the bottom rack to help catch any drips.  This was suggested from the dealer who agrees it's worthless!!  Evidently our govt regulations at work!!  I also bought some Easy off with a blue top as it was suggested it works well.  I haven't used it yet but I will when needed!!  Good luck. |

**Plaintiffs' Experiences with Whirlpool's Deceptively Advertised AquaLift Feature**

**Ray and Kris Angerman**

64.     Plaintiffs Ray and Kris Angerman are citizens of Minnesota and, at all relevant times, were residents of Hastings, Minnesota.  On or around October 17, 2013, Mr. and Mrs. Angerman purchased a Whirlpool Electric Stove equipped with AquaLift from the retailer Judge's Appliance in Hastings, Minnesota.  One of the bases for the purchase of that oven was that it contained a "self-clean" feature.

65.     Shortly after they purchased their oven, Mr. and Mrs. Angerman  ran the AquaLift self-cleaning cycle.  Once the cleaning cycle was complete, Mr. and Mrs. Angerman observed that AquaLift's "self-clean" did not clean the inside of the oven.  Mr. and Mrs. Angerman re-ran the AquaLift cleaning cycle several times after

---

[45]  Attached hereto as Exhibit 36.

[46]  Attached hereto as Exhibit 37.

that and observed that it still did not work to self-clean the oven.  Mr. and Mrs. Angerman were forced to manually scrub their oven after each use.

**Janice Parker**

66.     Plaintiff Janice Parker is a citizen of Georgia and, at all relevant times, was a resident of Woodstock, Georgia.

67.     On or around March 27, 2014, Ms. Parker purchased a Whirlpool Electric Stove equipped with the AquaLift "self-clean" feature from a BrandsMart U.S.A. store in Kennesaw, Georgia.  Ms. Parker was specifically in the market looking for a "self-cleaning" oven.  Prior to her purchase, Ms. Parker saw advertising on the oven indicating that the appliance was a self-cleaning oven.  She also recalls observing that the oven was energy efficient.   A BrandsMart U.S.A. sales representative informed Ms. Parker that AquaLift was the latest in self-clean technology and the cleaning cycle worked well.

68.     Approximately two months after her purchase, Ms. Parker used AquaLift for the first time.  She closely followed the instructions in the user manual. When the cleaning cycle was complete, however, she observed the cleaning cycle had no effect on the interior of her oven – it only left a large puddle of water.  As a result, Ms. Parker, was forced to manually clean her oven and remove the water from the bottom of her oven.

69.    Ms. Parker has activated AquaLift several times since she first used it, each time closely following the user instructions and has suffered the same results. Because of AquaLift's poor cleaning ability, she no longer uses her oven.

**Paula Stockbridge**

70.    Plaintiff  Paula Stockbridge is a citizen of Washington and, at all relevant times, was a resident of Gig Harbor, Washington.  On or around February 2016, Ms. Stockbridge purchased a KitchenAid Electric Stove equipped with AquaLift from Albert Lee Appliance in Tacoma, Washington.  The AquaLift cleaning system appealed to her because she saw placards in the Albert Lee appliance store showcasing the ease of the oven's self-cleaning attribute.

71.    Within approximately three months of purchase, Ms. Stockbridge activated the AquaLift feature after closely following the user instructions.  At the end of the "self-cleaning" cycle, Ms. Stockbridge observed that the AquaLift feature had no cleaning effect on the walls and back of her oven cavity and it did not loosen any baked on soils from the bottom of the oven.  She then attempted to manually clean her oven with Whirlpool's AquaLift "cleaning kit."

72.    Thereafter, Ms. Stockbridge complained to the retailer Albert Lee about the cleaning performance of AquaLift.  An Albert Lee sales representative informed her he would relay her complaint to Whirlpool.  She was later told by the sales

representative that there was nothing Whirlpool or Albert Lee could do to help with the cleaning performance of her oven.

73.   Ms. Stockbridge continued to use AquaLift and followed the instructions closely.   Still, AquaLift's "self-cleaning" attribute cannot remove or loosen any of the grease and soils from the back, side, and bottom of her oven.   Ms. Stockbridge is, therefore, forced to manually clean her oven.

**Whirlpool's Acknowledgement AquaLift Does Not Work as Advertised**

74.   From June 2018 to the present, the *Wisconsin State Journal* has reported that Whirlpool, in direct response to complaints about AquaLift's inability to "self-clean" as advertised, is initiating "buy backs" (*i.e.*, refunds of AquaLift ovens).

75.   The *Wisconsin State Journal* has published several articles about Whirlpool's "buyback" initiative.  First on June 4, 2018 the *Wisconsin State Journal* reported that Whirlpool ovens with a low heat "self-cleaning" feature called "AquaLift" does not, and cannot, work as advertised.   The article specifically featured the experience of consumers who complained to Whirlpool about the Ovens' inability to self-clean.   One consumer Barbara Behnke, for example, performed "five consecutive cleanings" with the AquaLift cycle and found it did not (at all) remove baked on grime from her oven.  What's more, Ms. Behnke told the *Washington State Journal* she "had numerous phone calls and emails to Maytag"

and "multiple visits from Maytag service techs" to try, in vain, to get AquaLift to work. See Exhibit 38.

76.    On behalf of Ms. Behnke, the *Wisconsin State Journal* wrote to Whirlpool and attached  fifteen photos it had received from Ms. Behnke of her oven, showing AquaLift's inability to clean.  ***In response, Whirlpool refunded her the full cost of her AquaLift oven ($894.64)***.

77.    This was not an isolated transaction.  In other articles from July to September, the *Wisconsin State Journal* reported that over ***20 consumers*** had received refunds or exchanges or would receive them as part of the "buy back" initiative.  Jan Rohde, of Madison Wisconsin, for example, complained that she had spoken to multiple Whirlpool customer care representatives about AquaLift's inability to "self-clean" and "was told the stains are cosmetic and that Whirlpool would send a me a free cleaning kit!  ***This is not acceptable***!"  In response to her complaint, Whirlpool ***refunded the full cost of her oven ($1,410)***.

78.    Whirlpool continues to offer consumers refunds and exchanges in response to complaints about AquaLift's "self-cleaning."  Whirlpool, in fact, has publicly confirmed the existence of this program to the *Wisconsin State Journal* through its representative, Cean Burgeson.  Mr. Burgeson has specifically informed the *Wisconsin State Journal* that Whirlpool is employing a process to complete "buybacks" for consumers who have complained about AquaLift's self-clean

- 36 -

feature. *See* Exhibit 39. Therefore, not only is Whirlpool aware of the scores of complaints about AquaLift, it has acknowledged, through these refunds, that AquaLift's advertising has deceived, or can deceive consumers who believed they were purchasing a "self-cleaning" oven when the oven is incapable of doing so.

## NOTICE AND DEMAND PROVIDED TO WHIRLPOOL

79.    On March 24, 2017, Plaintiffs' counsel wrote to Whirlpool to provide notice of Whirlpool's violations of the statutory and common laws of Minnesota, Georgia, and Washington on behalf of Plaintiffs, the Class, and Plaintiffs' respective state subclasses, as well as to demand, *inter alia*, a cessation of Whirlpool's false and misleading advertising, compensatory damages, restitution, and disgorgement. True and correct copies of the demand letters are attached hereto as Exhibit 40. Whirlpool has failed to cure its violations of the statutory and common laws of Minnesota, Georgia, and Washington within thirty days of Plaintiffs' counsel's demand letter.

## CLASS ACTION ALLEGATIONS

80.    Plaintiffs bring this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the following proposed Class: **All persons who purchased a Whirlpool, Maytag, KitchenAid, or Jenn-Air oven equipped with AquaLift in Minnesota, Georgia, and Washington.**

81.    Plaintiffs also seek certification of the following subclasses:

<u>Minnesota Subclass</u>: All persons who purchased a Whirlpool, Maytag, KitchenAid, or Jenn-Air oven equipped with AquaLift in the state of Minnesota.

<u>Georgia Subclass</u>: All persons who purchased a Whirlpool, Maytag, KitchenAid, or Jenn-Air oven equipped with AquaLift in the state of Georgia.

<u>Washington Subclass</u>: All persons who purchased a Whirlpool, Maytag, KitchenAid, or Jenn-Air oven equipped with AquaLift in the state of Washington.[47]

82.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and Subclasses may be expanded or narrowed by amendment or amended complaint.

83.     Specifically excluded from the Class are Whirlpool, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers or entities controlled by Whirlpool, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Whirlpool and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

84.     ***Numerosity***.  The members of the Class are so numerous that joinder of all members is impracticable.  Upon information and belief, the Class includes thousands of members who are geographically dispersed across the country and the

---

[47]  The Minnesota, Georgia, and Washington  subclasses are collectively referred to as the "Subclasses."  Unless otherwise noted, the Class and Subclasses are referred to herein as the "Class."

states of Minnesota, Georgia, and Washington.   The precise number of Class members are unknown to Plaintiffs.   The true number of Class members is known by Whirlpool, however, and thus can be ascertained through appropriate investigation and discovery and may be notified of the pendency of this action by first class mail, electronic mail, or published notice.

85.   ***Existence and predominance of common questions of law and fact***.   Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.   These common legal and factual questions include, but are not limited to, the following:

(a)   Did Whirlpool represent the Ovens to be "self-cleaning";

(b)   Whether Whirlpool's advertising campaign for AquaLift was false, deceptive, or misleading to a reasonable consumer;

(c)   Whether Whirlpool knew or should have known that its AquaLift technology could not perform as advertised;

(d)   Whether Whirlpool had a duty to disclose AquaLift is incapable of self-cleaning;

(e)   Whether the purported ability of AquaLift to "self-clean" tough baked-on soils from the interior of an oven in under one hour is a material fact to consumers;

- 39 -

(f)     Whether Whirlpool breached an express warranty made to Plaintiffs and the Class members;

(g)     Whether Whirlpool breached an implied warranty of merchantability made to Plaintiffs and the Class members;

(h)     Whether Whirlpool breached a contract with Plaintiffs and the Class members;

(i)     Whether Whirlpool represented that the Ovens with AquaLift have characteristics, uses, and benefits, that they do not have;

(j)     Whether Whirlpool advertised the Ovens with AquaLift with the intent not to sell them as advertised;

(k)     Whether Whirlpool failed to reveal a material fact regarding its AquaLift technology, the omission of which would tend to mislead or deceive consumers, and which fact could not reasonably be known by consumers;

(l)     Whether Whirlpool made a representation of fact or statement of fact material to its sale of Ovens equipped with AquaLift such that a person could reasonably believe the represented or suggested state of affairs to be other than it actually is;

(m)     Whether Whirlpool failed to reveal facts that were material to its sale of Ovens equipped with AquaLift in light of representations of fact made in a positive manner;

- 40 -

(n)     Whether Whirlpool violated the MCFA;

(o)     Whether Whirlpool violated the MDTPA;

(p)     Whether Whirlpool violated the GFBPA

(q)     Whether Whirlpool violated the GUDTPA;

(r)     Whether Whirlpool violated the WCPA;

(s)     Whether Whirlpool was unjustly enriched;

(t)     Whether Whirlpool acted willfully and in wanton disregard of the consequences of its actions to consumers;

(u)     Whether Plaintiffs and the Class members are entitled to damages and the amount of such damages;

(v)     Whether Plaintiffs and the Class members are entitled to an award of punitive damages; and

(w)     Whether Plaintiffs and the Class members are entitled to equitable relief, including an injunction enjoining Whirlpool from engaging in the wrongful and unlawful conduct alleged herein and ordering Whirlpool to engage in a corrective advertising campaign.

86.     ***Typicality***.  Plaintiffs' claims are typical of the claims of the other Class members in that Plaintiffs and the Class members were injured by the same wrongful conduct and scheme of Whirlpool alleged herein.

87.   ***Adequacy of representation***.   Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have retained counsel highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action.  Further, Plaintiffs have no interests that are antagonistic to those of the other Class members.

88.   ***Superiority***.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be involved in individual litigation of their claims against Whirlpool.  It would, thus, be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single United States District Court, and presents no unusual management difficulties under the circumstances presented in this case.

89.     In the alternative, the Class may also be certified because:

(a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for Whirlpool;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)     Whirlpool has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and injunctive relief with respect to the members of the Class as a whole.

90.     Alternatively, certain issues relating to Whirlpool's liability may be certified pursuant to Fed. R. Civ. P. 23(c)(4).

## CAUSES OF ACTION

## COUNT I

### Breach of Contract
### (On Behalf of the Class and the Subclasses)

91.     Plaintiffs reallege and incorporate by reference each allegation above as though fully set forth herein.

- 43 -

92.     Whirlpool offered to sell the Ovens with AquaLift technology that would "self-clean" heavy baked-on soils from the interior of an Oven in under one hour.

93.     Plaintiffs and the Class members accepted Whirlpool's offer by tendering the asking price for each Oven, thereby creating a valid and enforceable contract, supported by valuable consideration, for the sale of a Whirlpool Oven with AquaLift technology that would "self-clean" heavy baked-on soils from the interior of the Oven in under one hour.

94.     Whirlpool breached this contract with Plaintiffs and the Class members by delivering a Whirlpool oven equipped with AquaLift that, contrary to the terms of the contract between Whirlpool on the one hand and Plaintiffs and the Class members on the other, was incapable of "self-cleaning."

95.     As a result of Whirlpool's breach of contract, Plaintiffs and the Class members suffered damages.

## COUNT II

### Breach of Express Warranty
### (On Behalf of the Class and Subclasses)

96.     Plaintiffs reallege and incorporate by reference each allegation above as though fully set forth herein.

97.     Whirlpool designed, manufactured, advertised, distributed, and sold the Ovens equipped with AquaLift.

- 44 -

98.     In connection with each sale of a Whirlpool kitchen oven equipped with AquaLift, Whirlpool made certain affirmations of fact and promises relating to its Ovens specifically, that the AquaLift technology would "self-clean" heavy baked-on soils from the interior of the Oven in less than one hour.

99.     Whirlpool's affirmations of fact and promises relating to its Ovens became part of the basis of the bargain and created an express warranty that Whirlpool Ovens equipped with AquaLift would conform to Whirlpool's affirmations and promises.

100.    Whirlpool's express warranty regarding the benefits of AquaLift extends directly to consumers like Plaintiffs and the Class members, who are intended third-party beneficiaries of any contract between Whirlpool and the retailers where Ovens with AquaLift were sold.

101.    Whirlpool breached its express warranty by delivering Ovens with AquaLift that, contrary to the terms of the express warranty, could not "self-clean."

102.    Whirlpool's breach of its express warranty directly and proximately caused damages to Plaintiffs and the Class members.

103.    All conditions precedent to this claim, including notice, have been satisfied.

## COUNT III

### Breach of Implied Warranty of Merchantability
### (On Behalf of the Class and the Subclasses)

104.   Plaintiffs reallege and incorporate by reference each allegation above as though fully set forth herein.

105.   Whirlpool is a merchant with respect to kitchen ovens.  As such, a warranty that its Ovens with AquaLift were merchantable and was implied in the contract of each sale, including to Plaintiffs and the Class members.

106.   In order to be merchantable, Ovens with AquaLift, at a minimum, were required to: (a) pass without objection in the trade under the contract description; (b) be fit for the ordinary purposes for which such goods are used; and (c) conform to the promises or affirmations of fact made on the container.

107.   Whirlpool breached the implied warranty on its Ovens with AquaLift because, contrary to Whirlpool's representations, promises, and affirmations of fact, including on each product's label, AquaLift could not "self-clean" heavy baked-on soils from the interior of the Ovens.

108.   Indeed, the AquaLift technology in the Ovens could not "self-clean" when such Ovens left the possession of Whirlpool and, as such, could not perform according to Whirlpool's affirmative representations that the system would "self-clean" heavy baked-on soils from the interior of an oven in under one hour.

Therefore, the Ovens with AquaLift were not reasonably fit for their intended, anticipated, or reasonably foreseeable use.

109.   Accordingly, the Ovens with AquaLift would not: (a) pass without objection in the trade under the contract description; (b) are not fit for the ordinary purposes for which such goods are used; and (c) do not conform to the promises or affirmations of fact made on the container.

110.   Whirlpool's breach of its implied warranty directly and proximately caused damages to Plaintiffs and the Class members.

111.   Whirlpool's implied warranty regarding the benefits of AquaLift extends directly to consumers like Plaintiffs and the Class members, who are intended third-party beneficiaries of any contract between Whirlpool and the retailers where The Ovens with AquaLift are sold.

## COUNT IV

### Violations of the Magnuson-Moss Warranty Act (Implied Warranty)
### (On Behalf of the Class and Subclasses)

112.   Plaintiffs reallege and incorporate by reference each allegation above as though fully set forth herein.

113.   Under the MMWA, an "implied warranty" is one that "arise[s] under State law . . . in connection with the sale by a supplier of a consumer product." 15 U.S.C. §2301.

114.   Plaintiffs and the Class members are "consumers," Whirlpool is a "supplier" and "warrantor," and Ovens with AquaLift are "consumer products" as defined by the MMWA.  15 U.S.C. §2301.

115.   Under state law, a warranty that goods shall be merchantable is implied in every contract for the sale of goods by a merchant that deals in such goods.

116.   Whirlpool is a merchant with respect to kitchen ovens.  As such, a warranty that its Ovens equipped with AquaLift were merchantable was implied in the contract of each sale, including to Plaintiffs and the Class members.

117.   In order to be merchantable, the Ovens with AquaLift, at a minimum, were required to: (a) pass without objection in the trade under the contract description; (b) be fit for the ordinary purposes for which such goods are used; and (c) conform to the promises or affirmations of fact made on the container.

118.   Whirlpool breached the implied warranty on its Ovens with AquaLift because, contrary to Whirlpool's representations, promises, and affirmations of fact, including on each product's label, AquaLift could not "self-clean" the interior of the Ovens.

119.   The AquaLift feature on the Ovens was incapable of self-cleaning when such Ovens left the possession of Whirlpool and, as such, could not perform according to Whirlpool's affirmative representations that the system would "self-clean" heavy baked-on soils from the interior of an oven in under one hour.

Therefore, the Ovens with AquaLift were not reasonably fit for their intended, anticipated, or reasonably foreseeable use.

120.   Accordingly, the Ovens (a) would not pass without objection in the trade under the contract description; (b) are not fit for the ordinary purposes for which such goods are used; and (c) do not conform to the promises or affirmations of fact made on the container.

121.   As a direct and proximate result of Whirlpool's breach of the implied warranty of merchantability, Plaintiffs and the Class members have been damaged.

## COUNT V

### Unjust Enrichment
### (On Behalf of the Class and Subclasses)

122.   Plaintiffs reallege and incorporate by reference each of the allegations above as though fully set forth herein.

123.   This claim is pled in the alternative.

124.   In reliance on Whirlpool's false and misleading advertising campaign for the AquaLift technology, Plaintiffs and the Class members conferred a monetary benefit on Whirlpool.

125.   As such, Whirlpool has been unjustly enriched at the expense of Plaintiffs and the Class members.

126.   Specifically, through its false and misleading advertising campaign, as alleged more fully herein, Whirlpool has unlawfully received money and other benefits at the expense of Plaintiffs and the Class members.

127.   Whirlpool's receipt and retention of this financial benefit is unfair and improper under the circumstances.

128.   Therefore, Whirlpool should be ordered to disgorge its ill-gotten gains.

129.   Plaintiffs and the Class members have no adequate remedy at law.

## COUNT VI

### Violation of the Minnesota Prevention of Consumer Fraud Act – Unlawful Practices, Minn. Stat. §325F.68, *et seq.* and Minn. Stat. §8.31, *et seq.* (On Behalf of the Minnesota Subclass)

130.   Plaintiffs, the Angerman's, repeat, reallege, and incorporate by reference the allegations contained above, other than those made in the preceding Counts, as though fully stated herein.

131.   Pursuant to the Minnesota Prevention of Consumer Fraud Act ("MCFA"), the Ovens sold by Whirlpool are merchandise as defined in Minn. Stat. §325F.68 and Whirlpool is a person as defined in Minn. Stat. §325F.68.

132.   The MCFA prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale

- 50 -

of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby . . . ."  (Minn. Stat. §325F.69(1)).

133.   Defendant engaged in unlawful practices, misrepresentations, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of merchandise and/or services in violation of the MCFA in at least the following ways:

(a)   Deceptively representing to the Angerman's and the Minnesota Subclass that the Ovens could "self-clean" when they cannot;

(b)   Falsely promising the Ovens could "self-clean" to the Angerman's and the Minnesota Subclass when the AquaLift Ovens are incapable of "self-cleaning";

(c)   Failing to warn or disclose to consumers, including the Angerman's and the Minnesota Subclass that the Ovens cannot "self-clean";

(d)   Failing to reveal a material fact – that AquaLift does not function as advertised – the omission of which tends to mislead or deceive consumers, and which fact could not reasonably be known by consumers; and

(e)   Making a representation of fact or statement of fact material to the transaction – *i.e.*, that AquaLift has the capability to "self-clean" the inside of a Whirlpool oven in less than one hour – such that a person reasonably believed AquaLift could "self-clean" when it was not capable of self-cleaning.

- 51 -

134.   That Plaintiffs, Mr. and Mrs. Angerman, and the Minnesota Subclass believed they were purchasing Ovens that could "self-clean" when they could not, were material facts and would be material to a reasonable person.

135.   As a direct and proximate result of Defendant's violation of the MCFA, the Angermans's and the Minnesota Subclass have suffered and continue to suffer ascertainable loss in the form of money.

136.   Plaintiffs and the Minnesota Subclass seek relief under Minn. Stat. Ann. §8.31, including, but not limited to, damages, injunctive and/or other equitable relief, and attorneys' fees and costs.

## COUNT VII

### Violation of the Minnesota Prevention of Consumer Fraud Act – False Statement in Advertisement Minn. Stat. §325F.67, *et seq.* (On Behalf of the Minnesota Subclass)

137.   Plaintiffs, the Angerman's, repeat, reallege, and incorporate by reference the allegations contained above, other than those made in the preceding Counts, as though fully stated herein.

138.   Under the MCFA, the Ovens sold by Whirlpool are merchandise as defined in Minn. Stat. §325F.68 and Whirlpool is a person as defined in Minn. Stat. §325F.68.

139.   Whirlpool made materially misleading and deceptive statements to consumers about the "self-cleaning" ability of the Ovens through advertising touting

AquaLift as: (i) "oven cleaning redefined"; (ii) an "innovation nearly 50 years in the making"; and (iii) having an "exclusive coating on the interior [that] activates with water and heat, allowing moisture to release soils from underneath so food and debris easily wipe away." Also, Whirlpool advertised AquaLift as a self-cleaning feature that could do most, if not all, the work for consumers: (i) "pour two cups of water in the bottom of the oven, and let AquaLift technology do the work"; (ii) "it lifts tough baked-on soils from underneath, making oven cleaning a snap"; (iii) "all done in less time, with no odor, and no extreme heat like traditional, high-temperature self-clean ovens. AquaLift technology is oven cleaning redefined"; and (iv) "at the end of the meal, this large oven's easy wipe ceramic glass cooktop offers hassle-free cleanup, while AquaLift® self-cleaning technology delivers odor-free oven cleaning without chemicals in only 50 minutes."

140. This advertising was deceptive and misleading because AquaLift was incapable of "self-cleaning" and performing in the way Whirlpool represented.

141. Whirlpool had superior knowledge and bargaining power in its transactions with consumers and misrepresented AquaLift's "self-cleaning" ability to induce consumers to purchase the Ovens. These facts are material because reasonable consumers, like Mr. and Mrs. Angerman, would have paid less for their Ovens or would not have purchased them at all if they had known the Ovens could not "self-clean" as Whirlpool advertised.

142.    Mr. and Mrs. Angerman and the Minnesota Subclass seek an order requiring Whirlpool to disgorge all ill-gotten gains and provide full restitution of all monies it wrongfully obtained from the Angerman's and the Minnesota Subclass through its false and deceptive advertising of AquaLift.

143.    The Angerman's and the Minnesota Subclass also seek an award of damages and attorneys' fees for violations of Minn. Stat. §325F.67 pursuant to Minn. Stat. §8.31, subd. 3a.

## COUNT VIII

### Violations of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43, *et seq.* (On Behalf of Plaintiff and the Class)

144.    Plaintiffs, the Angerman's, repeat, reallege, and incorporate by reference the allegations contained above, other than those made in the preceding Counts, as though fully stated herein.

145.    This claim is brought under the Minnesota Uniform Deceptive Trade Practices Act (the "MDTPA"), Minn. Stat. §325D.43, *et seq.*

146.    Whirlpool is a "person" as defined in the MDTPA.

147.    Under the MDTPA, a person engages in a deceptive trade practice when in the course of business, vocation, or occupation, the person:

(a)    "[R]epresents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that

a person has a sponsorship, approval, status, affiliation, or connection that the person does not have";

(b)    "[R]epresents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; and

(c)    "[A]dvertises goods or services with intent not to sell them as advertised."  (Minn. Stat. §325D.44 (5)(7)(9)).

148.   Defendant violated these provisions of the MDTPA by:

(a)    Deceptively representing to Mr. and Mrs. Angerman and the Minnesota Subclass that the Ovens could "self-clean" when the Ovens are incapable of self-cleaning;

(b)    Falsely advertising the Ovens as "self-cleaning" to Mr. and Mrs. Angerman and the Minnesota Subclass when the Ovens are incapable of "self-cleaning";

(c)    Failing to warn or disclose to consumers, including the Angerman's and the Minnesota Subclass that the Ovens cannot "self-clean";

(d)    Failing to reveal a material fact – that AquaLift does not function as advertised – the omission of which tends to mislead or deceive consumers, and which fact could not reasonably be known by consumers; and

(e)     Making a representation of fact or statement of fact material to the transaction – *i.e*., that AquaLift has the capability to "self-clean" the inside of a Whirlpool oven in less than one hour – such that a person reasonably believed AquaLift could "self-clean" when it was not capable of self-cleaning.

149.   That Plaintiffs, Mr. and Mrs. Angerman, and the Minnesota Subclass believed they were purchasing Ovens that could "self-clean" when they could not were material facts and would be material to a reasonable person.

150.   The above unlawful and deceptive acts and practices by Defendant were immoral, unethical, oppressive, and unscrupulous.   These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

151.   As a direct and proximate result of Defendant's violation of the MDTPA, Plaintiff and the Class have suffered and continue to suffer ascertainable loss in the form of money.

152.   Pursuant to Minn. Stat. §325D.45, Plaintiffs seek individually and on behalf of all others similarly situated, all available remedies under law, including, but not limited to, actual damages, injunctive relief, costs, and attorneys' fees.

## COUNT IX

**Violations of the Washington Consumer Protection Act,
Wash. Rev. Code. Ann.  §§19.86.010, *et seq.*
(On Behalf of the Washington Subclass)**

153.   Plaintiff Stockbridge repeats, realleges, and incorporates by reference the allegations contained above, other than those made in the preceding Counts, as though fully stated herein.

154.   Whirlpool, Plaintiff Stockbridge and the Washington Subclass are "persons" within the meaning of Wash. Rev. Code §19.86.010(2).

155.   Whirlpool is engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code §19.86.010(2).

156.   The Washington Consumer Protection Act ("WCPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Wash. Rev. Code §19.86.020.

157.   Over the course of Whirlpool's business, Whirlpool intentionally or negligently concealed and suppressed material facts concerning the true "self-cleaning" ability of the AquaLift Ovens.  Whirlpool knew or should have known that it was deceptively advertising the Ovens as "self-cleaning."  In failing to disclose its deceptive practices, Whirlpool knowingly, intentionally, and/or negligently concealed material facts about the Ovens and breached its duty not to do so.

158.   Whirlpool thus violated the WCPA, at a minimum, by: (i) making direct statements or causing reasonable inferences about the Ovens that had the tendency to mislead consumers; (ii) engaging in advertising concerning the Ovens which had the tendency to mislead consumers; and (iii) failing to make clear and conspicuous disclosures of limitations, disclaimers, qualifications, conditions, exclusions or restrictions of the Ovens' "self-cleaning" ability.

159.   Whirlpool compounds the deception by repeatedly asserting to consumers – to the present day – the Ovens can "self-clean" when it knows the Ovens are incapable of doing so.

160.   Whirlpool, therefore, intentionally and knowingly misrepresented and continues to misrepresent material facts regarding the Ovens with intent to mislead Plaintiff Stockbridge and the Washington Subclass.

161.   Whirlpool knew or should have known that its conduct violated WCPA.

162.   Whirlpool was under a duty to Plaintiff Stockbridge and the Washington Subclass to disclose its deceptive advertising practices because Whirlpool was in a superior position to know the true facts about its representations of the Ovens "self-clean" labeling, and Whirlpool failed to disclose the deceptive nature of the labeling to Plaintiff Stockbridge and the Washington Subclass.

163.   Whirlpool's unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff Stockbridge and the

Washington Subclass about the true cleaning efficacy of the Ovens and the true value of the Ovens.

164.  Plaintiff Stockbridge and the Washington Subclass suffered ascertainable loss and actual damages as a direct and proximate result of Whirlpool's misrepresentations and its concealment of and failure to disclose material information about the Ovens.

165.  Plaintiff Stockbridge and the Washington Subclass who purchased the Ovens either would have paid less for the Ovens or would not have purchased them at all if they had known the Ovens could not "self-clean" as advertised.

166.  Whirlpool's violations present a continuing risk to Plaintiffs as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

167.  Pursuant to Wash. Rev. Code §19.86.090, Plaintiff Stockbridge and the Washington Subclass seek an order enjoining Whirlpool's unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the WCPA.  Because Whirlpool's actions were willful and knowing, damages should be trebled.

## COUNT X

### Violations of the Georgia Fair Business Practices Act,
### Ga. Code. Ann. §10-1-390, *et seq.*
### (On Behalf of the Georgia Subclass)

168.   Plaintiff Parker repeats, realleges, and incorporates by reference the allegations contained above, other than those made in the preceding Counts, as though fully stated herein.

169.   At all relevant times, Plaintiff Stockbridge and the Georgia Subclass are "persons" within the meaning of Ga. Code Ann. §10-1-392(24).

170.   The Georgia Fair Business Practices Act (" GFBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, including but not limited to "(i) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; (ii)"[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another"; and (iii) "[a]dvertising goods or services with intent not to sell them as advertised[.]" (Ga. Code. Ann. §10-1-393(b)).

171.   Whirlpool violated the GFPBA in the following ways:

(a)   Deceptively representing to Plaintiff Parker and the Georgia Subclass that the Ovens could "self-clean" when the Ovens are incapable of self-cleaning;

- 60 -

(b)     Falsely advertising the Ovens as "self-cleaning" to Plaintiff Parker and the Georgia Subclass when the Ovens are incapable of "self-cleaning";

(c)     Failing to warn or disclose to consumers, including Plaintiff Parker and the Georgia Subclass that the Ovens cannot "self-clean";

(d)     Failing to reveal a material fact – that AquaLift does not function as advertised – the omission of which tends to mislead or deceive consumers, and which fact could not reasonably be known by consumers; and

(e)     Making a representation of fact or statement of fact material to the transaction – *i.e.*, that AquaLift has the capability to "self-clean" the inside of a Whirlpool oven in less than one hour – such that a person reasonably believed AquaLift could "self-clean" when it was not capable of self-cleaning.

172.   Whirlpool willfully and knowingly engaged in the deceptive trade practices described above and knew or should have known that these practices were deceptive and in violation of the GFBPA.

173.   The facts that Whirlpool misrepresented and concealed were material to the decisions of Plaintiff Parker and the Georgia Subclass to purchase the Ovens. Plaintiff Parker and the Georgia Subclass would not have purchased the Ovens if they had known the Ovens could not self-clean as advertised.

174.   Whirlpool intended for Plaintiff Parker and the Georgia Subclass to pay for the Ovens in reliance upon Whirlpool's deceptive and misleading "self-clean" advertising for the Ovens.

175.   As a direct and proximate result of Whirlpool's violations of the GFBPA, Plaintiff Parker and the Georgia Subclass have suffered injury-in-fact and/or actual damages.

176.   Plaintiff and the Georgia Class are entitled to recover damages and exemplary damages (for intentional violations) per Ga. Code. Ann. §10-1-399(a).

177.   Plaintiffs also seek an order enjoining Whirlpool's unfair, unlawful, and/or deceptive practices, and any other just and proper relief available under the GFBPA per Ga. Code. Ann. §10-1-399.

178.   On March 24, 2017, Plaintiff Parker sent a letter complying with Ga. Code. Ann. §10-1-399(b).  Because Whirlpool failed to remedy its unlawful conduct within the requisite time period, Plaintiff Parker seeks all damages and relief to which Plaintiff Parker and the Georgia Subclass are entitled.

## COUNT XI

**Violations of the Georgia Uniform Deceptive Trade Practices Act
Ga. Code Ann. §10-1-370, et seq.
(On Behalf of the Georgia Subclass)**

179.    Plaintiff Parker repeats, realleges, and incorporates by reference the allegations contained above, other than those made in the preceding Counts, as though fully stated herein.

180.    Whirlpool, Plaintiff Parker, and the Georgia Subclass are "persons' within the meaning of Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"), Ga. Code. Ann. §10-1-371(5).

181.    Under the GUDTPA, a person engages in a deceptive trade practice when, in the course of his business he:

(a)      "Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have";

(b)      "Represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another";

(c)      "Advertises goods or services with intent not to sell them as advertised"; or

- 63 -

(d)   "Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."   (Ga. Code Ann. §10-1-372 (5)(7)(9)(12)).

182.   Whirlpool violated the GUDTPA in the following ways:

(a)   Deceptively representing to Plaintiff Parker and the Georgia Subclass that the Ovens could "self-clean" when the Ovens are incapable of self-cleaning;

(b)   Falsely advertising the Ovens as "self-cleaning" to Plaintiff Parker and the Georgia Subclass when the Ovens are incapable of "self-cleaning";

(c)   Failing to warn or disclose to consumers, including Plaintiff Parker and the Georgia Subclass that the Ovens cannot "self-clean;"

(d)   Failing to reveal a material fact – that AquaLift does not function as advertised – the omission of which tends to mislead or deceive consumers, and which fact could not reasonably be known by consumers; and

(e)   Making a representation of fact or statement of fact material to the transaction – *i.e.*, that AquaLift has the capability to "self-clean" the inside of a Whirlpool oven in less than one hour – such that a person reasonably believed AquaLift could "self-clean" when it was not capable of self-cleaning.

183.   Whirlpool willfully and knowingly engaged in the deceptive trade practices described above and knew or should have known that these practices were deceptive and in violation of the GUDTPA.

184.   The facts that Whirlpool misrepresented and concealed were material to the decisions of Plaintiff Parker and the Georgia Subclass to purchase the Ovens. Plaintiff Parker and the Georgia Subclass would not have purchased the Ovens if they had known the Ovens could not self-clean as advertised.

185.   Whirlpool intended for Plaintiff Parker and the Georgia Subclass to pay for the Ovens in reliance upon Whirlpool's deceptive and misleading "self-clean" advertising for the Ovens.

186.   As a direct and proximate result of Whirlpool's violations of the GUDTPA, Plaintiffs and the Georgia Subclass have suffered injury-in-fact and/or actual damage.

187.   Plaintiff Parker seeks an order enjoining Whirlpool's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the GUDTPA.  (Ga. Code. Ann §10-1-373).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for a judgment in their favor and in favor of the Class and Subclasses as follows:

- 65 -

A.     Determining that this action is a proper class action, certifying Plaintiffs as Class representatives under Rule 23 of the Federal Rules of Civil Procedure and appointing Robbins Geller Rudman & Dowd LLP as Class Counsel;

B.     Awarding temporary, preliminary, and permanent declaratory, injunctive, and other equitable relief, including, but not limited to, enjoining Whirlpool from continuing its false, deceptive, and misleading advertising campaign for AquaLift;

C.     Ordering Whirlpool to engage in a corrective advertising campaign;

D.     Awarding Plaintiffs and the Class damages, including statutory and punitive damages, and interest thereon;

E.     Awarding disgorgement of Whirlpool's revenues to Plaintiffs and the other Class members;

F.     Directing Whirlpool to identify, with this Court's supervision, victims of its conduct and to pay them restitution;

G.     Awarding Plaintiffs attorneys' fees and costs; and

H.     Providing any and all further legal and equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs respectfully demand trial by jury on all issues so triable.

DATED:  December 11, 2018                THE MILLER LAW FIRM, P.C.

                                /s/  *E. Powell Miller* (P39487)
                                E. POWELL MILLER (P39487)
                                SHARON S. ALMONRODE (P33938)
                                DENNIS LIENHARDT (P81118)
                                950 West University Drive, Suite 300
                                Rochester, MI 48307
                                (248) 841-2200
                                epm@miller.law
                                ssa@miller.law
                                dal@miller.law

                                ROBBINS GELLER RUDMAN
                                  & DOWD LLP
                                SAMUEL H. RUDMAN
                                MARK S. REICH
                                JORDAN D. MAMORSKY
                                58 S. Service Road, Suite 200
                                Melville, NY 11747
                                Telephone:  631/367-7100
                                srudman@rgrdlaw.com
                                mreich@rgrdlaw.com
                                jmamorsky@rgrdlaw.com

                                ROBBINS GELLER RUDMAN
                                  & DOWD LLP
                                PAUL J. GELLER
                                STUART A. DAVIDSON
                                CHRISTOPHER C. GOLD
                                120 East Palmetto Park Road, Suite 500
                                Boca Raton, FL 33432
                                Telephone:  561/750-3000

                                *Attorneys for Plaintiffs and the Proposed*
                                *Class and Subclasses*

- 67 -